Good morning, Your Honors, and may it please the Court. Richard Christensen on behalf of the appellants, James Nalder and Gary Lewis. Our primary contentions in this case, Your Honors, can be boiled down to, I think, twofold, to two points. First, that the default judgment, the State Court default judgment, which was entered against Gary Lewis, was and should be held to be the minimum consequential damages for UAIC's breach of its contractual duty to defend. And second, that the... It seems a little, there's a little bit of a moral hazard, moral hazard, doesn't it? The plaintiff and defendant, I mean, the defendant takes a default, right? Plaintiff alleged 3.5 million, and now they gang up on the insurance company. It seems like a little bit collusive to me. Well, Your Honor, there's been, as I submitted in the 28J letter, I don't know if you've had an opportunity to read that opinion from the, or order rather, from the District Court, from the District Court of Nevada, Judge Gordon there just recently, at the end of this year, or last year, excuse me, had a case almost exactly on point to this. And he did a quite thorough job of canvassing the Nevada law on contractual breaches. And that is something that he talks about, is whether or not there's evidence of fraud and collusion between the injured party and the insured. But that's something that is a factual thing that he even said can't be decided on summary judgment. And I think this case is even stronger on that point, in that there is no evidence in that case, I believe, excuse me, there was a settlement agreement or a covenant to execute that was agreed to prior to the default judgment even being entered. In this case, it's not, there's no such agreement. The insured, Gary Lewis, didn't even, wasn't in contact with, with the clients. Right. He is now one of our clients, but that wasn't until after the default judgment was already entered and, and against him that he came to try and figure it out. Well, right. At that point, after he, he allows the default judgment to be entered, his interest and your other clients' interests are completely aligned. Right. Correct. And whatever it is that you get a, you get a default judgment, but you don't get an actual judgment. I mean, so you get, I'm sorry, you get a default, which allows bars other party from participating, but then you have to go prove up damages. And, you know, if you say it's $3 trillion, the court doesn't give you a $3 trillion. It actually requires sometimes an evidentiary hearing, sometimes proof on, on, on, on affidavits or. I, honestly, Your Honor, I can't say exactly the process that went through in this case. But I do believe that there was a proof of, of some sort of demonstration of damages in this case. I think there was definitely a determination as far as damages were concerned. I mean, the Nevada courts would do on this, right? Not directly on the consequential damages for the contractual breach of the duty to defend. And again, in the 28 days. Some, some states limited to their policy terms and some states allow, allow, pass the above and beyond the policy amounts, correct, for a breach of the duty to defend. That's correct. And that's one of the reasons that I supplied the question. I think that it would be a great question to certify to the Supreme Court of Nevada. I do. You don't mind taking a trip to Carson City? I'm sorry? You don't mind taking a trip to Carson City? It's closer than San Francisco. But we have better restaurants here. Yes. But the, I do think that the Andrews v. Century Assurity case is, is on point. And I do think that the Supreme, the Nevada Supreme Court would agree with Judge Gordon on that point. That it's consistent with previous holdings wherein consequential damages are allowed. And that given the heightened duty that insurers have to their insured, and especially the broad and very important duty that is the duty to defend, that it would be unreasonable to... I must say, I'm, I am surprised that this question has not arisen in Nevada law. I mean, this, this kind of claim has existed for quite a while, yes. 30, 40 years at least, right? Yes. And this is the first case? I, based on my understanding and from what I have, the cases that I've read and the cases that are in the briefs, I mean, I don't, there hasn't been, and Judge Gordon himself in, in the Andrews v. Century Assurity case said that the Nevada Supreme Court hasn't spoken directly on this point. And there is also an intermediate appellate court in Nevada, right? Now there is, yes. There is now. At this time, yeah. I mean, fairly, fairly recently. Yes. And they don't have any, any cases either? Not that I'm aware of. Okay. The second point is that we believe that the case should be remanded to the district court for further proceedings on the extra contractual or claims, including the breach of the duty of good faith and fair dealing, as we feel that there are issues of material fact that are, and that a reasonable juror could find that a breach of the duty existed here. Most importantly, we feel that the district court applied the incorrect, incorrect standards when deciding that there was no proof of, of a breach of the duty of good faith and fair dealing. At several points during the district, during the first district judge thought they were right. Correct. And then this, and so it's hard to say that they were unreasonable in taking that position. I mean, yes, we reversed. Right. But how can you say they have bad faith in taking a position that a district judge actually finds persuasive and enters judgment based on? Again, I think that the confusion comes where there is the standard that's being applied, both in the previous, before we came to this court the first time, and, and in the motions for summary judgment just prior to coming to the court this time. The, the judge repeatedly stated such things as, in the hearing, in the oral hearings on those motions for summary judgment, knowledge, intentional proof of intent, intentional disregard. This is not the standard for finding a breach of the duty of good faith and fair dealing in Nevada. The standard is an actual or implied awareness of an absence of reasonable basis. And, and I would posit to the court that finding a reading of a policy of insurance that is reasonable, it doesn't follow ipso facto that the denial of coverage is reasonable because insurance policies have to be read, not just in a vacuum in and of themselves, but in the background of the law that supports them. And in Nevada, an insurer is obligated to read a policy in order to provide the most coverage possible to their insurers. Therefore, if UAIC, in this case, was aware of the other reasonable reading, which this court has found and which the district court found to be in force, and thus held that they breached their duty to defend, which was Nalder's reading, our client's reading. If they were aware of that reading, that other reasonable reading, and they chose their reading, which does not provide coverage, I would posit that there is no reasonable basis for that because by law, they're required to, if there's two reasonable readings, adopt the one that provides coverage. They should search for coverage where they can. Counsel, I'm interested in where we stand on the statutory claim, 686A310. What, where does that fit in the terms of this appeal? I believe that the statutory claims were upheld as dismissed from this court at the original appeal, the first appeal. But those, those weren't. So they're out of the case? I think that was the case. I don't know for sure. I apologize. I know that there were some claims that were made at the first appeal that were upheld as being properly dismissed by this court. If it was the 686 claims, I'm not positive. I apologize. And if I may, can I, unless you have further questions, may I do a rebuttal? Sure. Thank you. You'll have your full 13 seconds when you get up. Okay. Good morning, Your Honors. Matthew Douglas for United Automobile Insurance. May it please the court, counsel. Your Honors, I think, as was just evident from the last colloquy you had with Appellant's counsel, I think there's no question that my client's interpretation of the renewal offer was reasonable. The first district court judge hearing it, in fact, agreed with us. And I think Appellant's argument that, well, maybe if they knew the interpretation that Mr. Lewis had, it was unreasonable. The problem with this is they have offered no facts whatsoever to suggest there's a material issue as to whether United Auto was aware of any reading of this renewal offer, other than the one that they had and Judge Reed disagreed with. They deposed almost every employee at United Auto that ever touched this case. They've offered no facts to suggest they were aware of any alternative reading that had ever been raised before. And, in fact, as we point out in the record, Mr. Lewis himself acknowledged he never raised this question to either his insurance agent or United Auto. At any time prior to March of 2010, which was during this litigation, and it was, in fact, his second argument for coverage. As I point out in the briefs, his initial discovery response has suggested that he actually paid for his new policy term on time and we somehow lost the payment. Well, when we asked for discovery to ascertain this mode of this missing payment, he was not forthcoming. We had to file a motion to compel, literally on the doorstep to the courtroom on the hearing on that motion, they provide amended answers which now say, wait, we've had time to look at all your records, your renewal offer is ambiguous. Now, they were ultimately successful. This court remanded on that point. We were, the court implied the policy. We paid our $15,000 policy limits. However, to suggest that UAIC at any time before March of 2010 had any notice that Mr. Lewis read this ambiguity in the renewal offer is disingenuous. There's no facts in the record. And, in fact, I think if you can agree. But there's sort of a disconnect. You say there's no evidence that any of your people read the evidence as the policy is being ambiguous. And yet to get to the Ninth Circuit and three judges say it is ambiguous. And so we read it. Now, you know, I know we're really smart. You know, that's why we're judges. But we're not that much smarter than you guys. So surely somebody in the company must have been able to figure out that interpretation that three judges of this court wound up coming up with. And if not, why isn't it unreasonable to say you're just not doing your job right? You're doing your job in an unreasonable fashion. That if you, a company doing business in Nevada dealing with consumers, cannot come up with an interpretation that three judges of the Court of Appeals unanimously find is a plausible interpretation. If you can't do that, then you are being unreasonable just by the failure to come up with this interpretation. Well, Your Honor, I think it is.  I mean, you pretty much what you're saying is between the lines is this is such a crazy interpretation that the Ninth Circuit came up with is that we could have not had any idea that that's what it was. Well, is that what you're saying? No, Your Honor, of course not. What I think I was on the panel. So if you were on the panel, if that's where you want to go. Obviously, we obviously we would have preferred the initial district court judgment be affirmed. But that does not say that in any way do I think the original. I mean, they did at some point before you walked into this courtroom tell you the alternative interpretation. You're talking about the appellant? Yeah. Well, yeah, during this lawsuit. Okay. So at that point, you have somebody telling you here is an alternative interpretation, right? At that point, you could have said, dang, you know, this is so smart of you. We couldn't come up with it because we are just not that smart. But now that you've come up with this alternative interpretation, here's $15,000. You know, probably could have just pulled out of your pocket, right? You know, it's a small sum for the insurance company, but it just said, I'll have a check for you in the morning. Now that you've pointed out to me an alternative interpretation. So at that point, you know there is an alternative interpretation and you reject it. You, I don't mean you personally, but your client rejects it. So even if we admit the possibility, which I find very strange that nobody in this insurance company could come up with this alternative interpretation, all the lawyers, all the insurance adjusters couldn't come up with it. At one point, it was handed to you and you had a chance. At that point, you could have said, bam, paid you. Well, I think, Your Honor, and I understand, I understand your point. Nothing prevented you from doing that. Well, we did pay as soon as the, at that point, it was legal argument, right? You're right. The first panel hearing it overturned it, it went back. Should they have paid it right then? Don't try to confuse the issue. The question is, the argument you are making is, we couldn't figure out there was an alternative interpretation. So we can't be in bad faith for not providing it because we had no idea there was an alternative interpretation. I express some skepticism that that could possibly be the case. But even if you accept that to be the case, that everybody at your client had tunnel vision and just couldn't see an alternative interpretation, what happens the minute they come up with an alternative interpretation and say, hey, look, here is an alternative interpretation. What is the excuse for not pulling out the cash machine and handing over the money and say, whoops, we were wrong, now we realize there is an alternative interpretation, we'll pay you. I would say in hindsight, perhaps your Honor's argument is well taken. I will only say that at this point... It's not an argument. It's not an argument. It's a question. What is it that precluded you? I mean, at that point, you can't say, you can no longer say, we had no idea such an alternative interpretation existed, right? Sure. Okay, so take it from there. You can now no longer make that argument. I would just say that... So what do you say now? It does not affect the damages they're trying to collect now, because the default judgment happened in 2008. We're talking about bad faith. Right. We're talking about bad faith, and you're saying we can't have had any bad faith because we didn't know there was an alternative interpretation. I think that, if your Honor is suggesting that in the year between when the appellate, original appellate panel remanded the case, and when the district court judge hearing the case did affirm the ambiguity if we should have paid the policy during that time, I guess I have no good answer for you except to say that it was a legal argument being made in advance at that time. It had not been confirmed by the court that it was indeed an ambiguity. Yes, there was another interpretation offered. But the important fact about this case is this was an ambiguity in a renewal offer, and I think that's an important point to make. This was all the cases cited. We're talking about a policy that was enforced, and maybe the insurance company made a judgment call about whether someone was operating in the course and scope, as in the Andrew case pointed out by appellants, or whether or not someone had permissive use, one of these arguments that would involve a factual investigation. There was no, the investigation, every fact at the time revealed that this policy, the premium was due on June 30th, and you say what information was there, what did they do, why did they not see this ambiguity sooner? Well, I'll ask you, they have thousands of other customers, and discovery was done, not a single other customer ever complained of this ambiguity in the renewal statement prior to this incident. And I think that's an important point to make when you ask, well, were they just dumb, did they not see it? No other customer raised this. It was only raised post hoc. Let's face it, by Mr. Lewis' counsels in this case, a good piece of lawyering on their part. Do we now say that they get a windfall of a $3.5 million default judgment for what I think is a reasonable interpretation of a renewal offer, six years in the past? It's not equitable, and it certainly wouldn't do justice. You could have paid the $15,000 once you heard his argument. In terms of, well, once he made the argument, but the original district court judge agreed with our interpretation. And so, what was my client to do then? Then the appellate court reverses, so I mean, is my client, they're left in a position where the law, the justices hearing the case, are not even in agreement on whether it was ambiguous. So to say they should just open their pockets and pay, maybe. But were they, maybe, maybe they should have. But I don't think it would be reasonable not to. I thought our panel wasn't unanimous. I thought our panel was unanimous. This panel, or you mean the previous panel? I think you're referring to the fact that our panel was unanimous, but that it unanimously reversed the original judge. The original district court judge. And so, I think at the very least, that's the essence of this case. There are two reasonable interpretations, and let's face it. If you look at the renewal offer, it said due date, two places on the renewal. The due date was surrounded in stars. Now, I understand that they've made an argument that the first panel agreed was a potentially reasonable interpretation, and that's fine. But in the normal course, we all pay bills. There's a due date on the bill. Everyone knows what that means. So, to suggest my client was a reasonable- Yeah, everybody knows what it means, is if you get it a couple of days late, nothing bad will happen. They don't turn off your gas, if you get your bill paid a couple of days late. They don't throw you out of your house, if you get your mortgage a couple of days late. They don't turn off your water, because you get your water bill a couple of days late, they don't turn off your cell phone, if you get your cell phone. They don't turn off your TV. In fact, I can't think of anything that consumers do and pay for that if they miss their deadline for two days, it disappears. So, that's a bad argument to raise, so we all know what it means. But we all know what it means, that if you get it in with a few days of the due date, you're okay. I haven't, I've been paying bills for decades. And that's my experience. I mean, I try not to, but once in a while, you're on vacation, something happens, a bill gets lost, something of that sort. You get it in late, you might have a little penalty, you might have to pay some interest on a credit card or something like that, but. Council, I know you're over time, but I have two questions. First, what is your response to your opposing council's suggestion that we certify to the Nevada Supreme Court, and then secondly, what is your take on the Andrews case that was also mentioned by your opposing council? Thank you, and I'll try to be very brief. Obviously, if this court chooses to certify, we would understand. I think based upon existing Nevada law, you do not need to do that. The Rayburn case, as well as the Home Association Savings case, both cited in the briefs, I think adequately speak to this issue. In those cases, the Nevada Supreme Court essentially said that breach of the duty to defend results in the damages would be fees and costs incurred by that insured party. But the question of consequential damages was not raised in those cases. No, it was not, but I think Nevada Supreme Court could have spoken to that. Your Honor's brought up earlier there's no case on this. The Nevada Supreme Court has tended to be very circumspect on what they issue opinions on. I think they wait for things to become appropriately ripe. That combined with a very small state, and up until this year, only one layer of judicial review has led to the fact that we do not have as rich a case law as other states, especially California. We often look to California, in fact, for guidance, and in this case- What would California do in this case? Well, I think California law in this case, it would not assess the consequential damages. This was not a foreseeable consequence. I mean, they believe no policy was enforced, so it is completely unforeseeable that the default judgment would be entered and assessed against them. Aside from the other question of what happens to your client or what happens to the Naldas and the Lewises, isn't this exactly the kind of question that ought to be decided by the Nevada Supreme Court? I mean, this is a question that seems to cut across a lot of policies. It involves insurance, which is a matter of great, primarily, state concern. And it just strikes me as the kind of thing where the state court would have a much better feel for the realities of the situation than we do, and the realities on the ground in the state, and also for the regulatory regime. Just strikes me as a sensible idea to get the matter- I mean, we issue something, we say something, and of course, it can be- whatever we say can be ignored and probably should be ignored by the state courts. So, practitioners in the state really have no firm guidance at that point, whereas the Nevada Supreme Court, once it speaks- You know, counsel, with respect to Andrews, you haven't reached that point. Very quickly- I'm obviously focusing on the Judge Gordon decision in Andrews, Andrews 2. Yeah, yeah, and Judge George's decision in Andrews 2. I think it's distinguishable. I mean, what's important to remember in that- first of all, obviously, he's interpreting what he thinks Nevada might do. It's not Nevada law, per se. Secondly, it's distinguishable in that case, the complaint clearly alleged that that particular insured was driving in the course and scope on a garage policy, which by its very nature is a slightly different type of insurance policy. He knows this person may be operating many different vehicles. So, it's considered in the underwriting for that policy that he would be operating other vehicles. The complaint itself alleged he was in the course and scope of his work when doing so. So, for me, that makes a big difference because Judge Gordon suggested that the default judgment was foreseeable because of that fact. In this case, there's just no policy in effect. And in fact, we argue that because it was an ambiguity in the renewal, and if you look at the documents, there was no policy. One policy expired June 30th. A new policy incepted July 10th after the accident. That intervening period, I believe you can find de novo that the district court judge implied a contract in law to do justice for $15,000. But that is an equitable remedy. And if you can come to that decision, there is no breach of the duty to defend because I ask that as an equitable remedy, you fashion a remedy that is equitable. And an unforeseeable default judgment against my client would not do justice in this case. My client, by the way, has paid over $80,000 in attorney's fees and costs already. There was a pending fee motion under Nevada state law for fees and costs, which came about after this appeal was filed, so it's not part of your record. But we have paid, in addition to the $15,000, already over $80,000 in fees and costs. I think justice has been served. Thank you. Okay. Thank you. You had 13 seconds. We'll round it up to a minute. Thank you, Your Honors. I just, very quickly, I'll try to address a couple points. The proof of actual or implied awareness that there was another reasonable reading of the policy, I think there is in the record. The depositions of several of the employees and persons most knowledgeable of UAIC, a jury could certainly reasonably find that there was an implied awareness. Ms. Jan Cook, who is a person most knowledgeable, testified that when UAIC confirmed coverage, they looked at the declaration page and the payment receipts. Didn't even look at the renewal notice, which they had an awareness of, and they know that that's part of the contract. Furthermore, they had a knowledge of his reasonable expectations in that he continually paid his policies not exactly on time in his payments, his monthly payments. The only other thing, the two other things I'd like to say real quick, both the counsel's suggestion that this court can find an implied contract and that they did not breach their duty to defend, I don't think the court could find that. Those issues were not appealed properly by the defendant, and so they're not properly before this court. And the district court explicitly said that he was not implying a policy, that he found that there was a policy actually in force, a real policy, and that they breached their duties to defend. And the last thing, Your Honor had asked my opposing counsel what California would do. The Pershing Park Villas case, I think, says exactly what California would do in such a situation as far as with regards to the default judgment and whether or not that's consequential damages. And in particular, they hold, this court held in that case, citing two California law, that when the insurer refuses to defend the insured, that a default judgment is a foreseeable result. And even if it's non-foreseeable, that can still be a consequential damages. Specifically, it says the insurer will be liable for consequential damages regardless of foreseeability when there's a breach of the duty to defend. And if that's all... So you think California comes out into the, on your side of the fence? I believe so, yes, Your Honor. I wouldn't be surprised. There's no further questions. Thank you. Thank you, Your Honor. Can I just argue a sense a minute?
judges: Kozinski, Noonan, O'Scannlain